COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Beales and Retired Judge Clements*
Argued at Richmond, Virginia


CYNTHIA BROOKE EVANS
                                                    MEMORANDUM OPINION** BY
v.        Record No. 0871-08-4              JUDGE RANDOLPH A. BEALES
                                                        JANUARY 13, 2009
XEROX CORPORATION, INC. AND
  CONTINENTAL CASUALTY COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Robert B. Adams (Gammon & Grange, P.C., on brief), for appellant.

        Joseph C. Veith, III (Trichilo, Bancroft, McGavin, Horvath &
        Judkins, P.C., on brief), for appellees.


        Cynthia Brooke Evans ("claimant") appeals from a decision of the Workers'

Compensation Commission awarding Xerox Corporation and its insurer (collectively,

"employer") a lien against a civil damages award from an action against a third party.  Claimant

argues that the commission erred in setting the amount of the lien.  After reviewing the record

and the argument, we disagree and affirm the commission's award.

BACKGROUND

        Claimant sustained a cervical spine injury while working for employer in 1998.

Employer agreed that she was entitled to temporary total disability benefits, and the commission

---

        * Judge Clements participated in the hearing and decision of this case prior to the
effective date of her retirement on December 31, 2008, and thereafter by designation pursuant to
Code § 17.1-400(D).

        ** Pursuant to Code § 17.1-413, this opinion is not designated for publication.

approved a memorandum of agreement for payment of compensation and benefits to claimant within months of the accident.

For the next several years, claimant received compensation and various medical treatments, but the pain in her upper body and extremities did not abate. Finally, claimant's physician, Dr. Grice, recommended that claimant have surgery to implant a spinal cord stimulator, which the doctor believed would help control the pain. Employer paid for the surgery.

Initially, claimant's condition improved. Dr. Grice believed that claimant would eventually, with sufficient motivation, regain the ability to work, although she would still have limitations on her abilities. However, after about a month, claimant developed an infection at the sight of the implanted device. In order to clear up the infection, the stimulator had to be removed.

On November 12, 2003, during follow-up surgery regarding the stimulator, claimant was injured such that her spinal cord began swelling, which developed into "triplegia and significant spasticity." As a result, her upper body problems worsened, and her ability to use her legs was permanently affected, such that she became permanently disabled. She now required a wheel chair to move around. Employer agreed to pay permanent total disability benefits.

Claimant underwent treatment for the problems associated with these new injuries. By the time of the hearing before the commission, however, claimant was undergoing essentially the same course of medical treatments that she received prior to the November 12, 2003 surgery, except that some former medical options were no longer available to her (such as a spinal cord stimulator) and her physical therapy now involved her lower body as well as her upper body. The pain in claimant's upper body had returned to its pre-November 12, 2003 level. When asked to explain which of claimant's current medications were solely related to her previous problems

and which were related to her injury during the surgery, Dr. Grice said it would "be impossible to separate" the medications in that manner because, even without the surgery, claimant's medications would have changed and possibly increased given both her increasing tolerance for the medications and the different levels of pain claimant had. Dr. Grice explained that claimant's post-surgery pain medication was "[a]t least in part" related to the spinal cord injury, but she could not quantify that relationship. Several of claimant's current medications were related to both her original pain and the additional problems from the November 2003 surgery. Dr. Grice noted that she could not speculate about claimant's use of pain medication if the November 2003 surgery had been successful, as patients often continue to use some medication after implantation of a spinal cord stimulator.

Claimant brought a malpractice action against the third parties involved in the November 2003 surgery. In settlement of that suit, she received an award of $1.03 million. Employer was not involved in the settlement of the case and did not approve the final award.

Employer filed a request with the commission for a lien on claimant's malpractice settlement. The deputy commissioner awarded employer a lien in the amount of $444,574.75. The commission, although adjusting the amount of the lien, affirmed the deputy's award.

ANALYSIS

Claimant acknowledges that employer is entitled to a lien against the settlement she received from the third-party tortfeasors. However, she contends that the commission erred in the amount of the lien it awarded to employer, arguing that the commission incorrectly included the total cost of her medications in calculating the lien when it should have used only the increase in the cost of her medications after the November 2003 surgery. She essentially argues that employer should bear the burden of proof for calculating the amount of the lien. Employer counters that it bore the burden to prove an entitlement to a lien, but then the burden shifted so

that claimant bore the burden of proving which costs were not related to the intervening tortious surgery, but instead related solely to the original injury. We find that the commission did not err in setting the amount of the lien.

> Under the Workers' Compensation Act, the employer/insurer is subrogated to an employee's rights against a third party responsible for the injuries giving rise to the payment of compensation. Code § 65.2-309(A). The purpose of the statute is to reimburse an employer who is compelled to pay compensation as a result of the negligence of a third party and to prevent an employee from obtaining a double recovery of funds.

Tomlin v. Vance Int'l, 22 Va. App. 448, 452, 470 S.E.2d 599, 601 (1996). Here, claimant chose to sue the third-party tortfeasors without involving employer in that process or in the settlement. Therefore, since claimant concedes employer is entitled to a lien once she independently reached a settlement with the third parties, it became claimant's burden to establish the amount of the malpractice award that was not subject to the lien. See Hawkins v. Commonwealth/Southside Va. Training Ctr., 255 Va. 261, 269, 497 S.E.2d 839, 842 (1998) (citing Bohle v. Henrico County Sch. Bd., 246 Va. 30, 35, 431 S.E.2d 36, 39 (1993)).

Claimant cites City of Newport News v. Blankenship, 10 Va. App. 704, 396 S.E.2d 145 (1990), in support of her position. However, that case did not address the burden of proof in relation to the amount of an award, but instead discussed the burden for determining if an employer was entitled to a lien at all. Id. at 708-09, 396 S.E.2d at 147-48. In fact, the amount of the lien was not an issue in Blankenship because the commission found the employer was not entitled to a lien, and this Court affirmed that decision. Id.

The commission here accepted the testimony of Dr. Grice that claimant would have been able to return to work if the surgery had been successful and that all of claimant's continuing treatment was related in at least some part to the tortious surgery. This credibility determination was within the discretion of the commission. Newport News Shipbuilding & Dry Dock Co. v.

- 4 -

Lawrence, 38 Va. App. 656, 664, 568 S.E.2d 374, 378 (2002). Claimant does not argue that Dr. Grice's testimony was inherently incredible or even that Dr. Grice's testimony was incorrect. Therefore, the commission had a sufficient factual basis for its determination that the cost of claimant's medications should be included in the amount of the lien. Claimant did not prove that these amounts should be excluded from the lien.

## CONCLUSION

We find the commission did not err in awarding a lien to employer or in setting the amount of the lien awarded, and, therefore, we affirm the commission's decision.

<u>Affirmed.</u>