COURT OF APPEALS OF VIRGINIA

Present:  Judges Fitzpatrick, Overton and Senior Judge Duff
Argued at Alexandria, Virginia


USAIR, INC.

                                  MEMORANDUM OPINION[*] BY
v.       Record No.  2664-96-4     JUDGE JOHANNA L. FITZPATRICK
                                      JUNE 10, 1997
TRACIE G. WATSON


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Michael N. Salveson (Hunton & Williams, on
          briefs), for appellant.

          James E. Swiger (Swiger & Cay, on brief), for
          appellee.


     On appeal from the full commission's decision awarding

benefits to Tracie G. Watson (claimant), USAir, Inc. (employer)

contends that the commission erred in (1) finding that claimant's

release to return to work was conditional based upon her

receiving therapy, (2) imposing an inappropriate burden on

employer, and (3) improperly considering hearsay statements.[1]

For the reasons that follow, we reverse the judgment of the

commission.

BACKGROUND

     On February 6, 1993, claimant sustained a compensable injury

to her lower back and left knee.  She was paid compensation

through April 17, 1995 in the amount of $334.93 per week.

_____

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

[1]Because we reverse on the first issue, we need not address
employer's other assignments of error.

On April 17, 1995, employer filed an Application for Hearing to terminate or suspend claimant's compensation asserting that claimant had recovered from her physical injury. The deputy commissioner found that "[b]ased on medical evidence . . . we are of the opinion that Watson was able to return to her pre-injury job as of April 11, 1995. The employer/carrier's obligation to continue to pay compensation benefits must cease."

Upon review of that initial determination, the full commission remanded the case to the deputy commissioner, because "the issue of whether the claimant is psychologically disabled as a result of her industrial injury . . . has not been determined. The question of whether she has been released to return to her preinjury employment cannot be resolved until the issue of psychological disability is addressed." The case was remanded with "directions that the Deputy Commissioner instruct the employer to schedule an evaluation of the claimant by Dr. Friedman. Following this evaluation, the case will be placed on the docket for a Hearing de novo."

Claimant was evaluated by Dr. Joel R. Friedman (Dr. Friedman) on November 20, 1995. Dr. Friedman concluded that claimant suffered from chronic pain syndrome. He stated that,

> Given the extensive past efforts at physical rehabilitation, I do not recommend any further such efforts. Since she has not had any psychological counseling around the issues of adjustment to chronic injury, I do think this may be worth a try. I would, therefore, recommend a brief course of structured psychotherapy for approximately 4 to 6 sessions . . . . I would then use this

2

as a foundation to help Ms. Watson develop appropriate coping skills to self-manage her chronic pain that would enable her to resume a more normal, less disabled, lifestyle including return to work.

Barbara J. Kinder, R.N. (Kinder), the rehabilitation case manager retained by employer, confirmed, by letter dated December 13, 1995 and signed by Dr. Friedman, her conversation with Dr. Friedman wherein he "stated that Ms. Watson could be released to work . . . with regard to her mental health status . . . [and] further recommend[ed] that she schedule an appointment . . . to coincide with her first week of work in order to work with her on her adjustment issues."

Claimant was also evaluated by Dr. Bruce M. Smoller (Dr. Smoller). He reported on January 2, 1996, as follows:

Ms. Watson would benefit from a short-term session of counseling with antidepressant medication. This should be tied clearly with the return to work. I would recommend eight sessions with a return to work during those eight sessions. Antidepressant medications should be begun at the first session.

The patient has no limitation of duties as related to mental health. She has no disability according to AMA Guidelines related to her psychiatric status. Her psychiatric status, however, does impair her efficiency somewhat and thus it would be helpful to have her in supportive therapy for eight sessions with medication while she returns to work.

MMI has been reached physically. Psychiatrically, MMI will have been reached after the eight sessions of psychotherapy.

Finally, this patient may return to work during the course of therapy. Assuming this

3

> therapy begins the middle of January 1996, a
> return to work date of 1/31/96 or 2/1/96 is
> not unreasonable. <u>Technically, the patient
> may return to work immediately from a
> psychiatric standpoint as she has no
> psychiatric disability.</u>

(Emphasis added.)

At the next hearing before the deputy commissioner, claimant testified regarding her impression of her responsibilities "from a psychiatric standpoint." She testified that "Well, my understanding was that I would need treatment" and that it was not her understanding that it was her responsibility to schedule any appointments. The deputy commissioner considered her statements over employer's objections.

The deputy commissioner's opinion of April 30, 1996, terminated the compensation awarded to claimant, finding as follows:

> [A]bsolutely no evidence of a psychiatric
> inability to return to regular work and other
> than the brief period from August 18 through
> August 27, 1995 we find no physical inability
> to work . . . . [W]hile [] Dr. Friedman
> recommended counselling [sic], neither he nor
> Dr. Smoller expressed that the claimant had a
> mental condition that prevented her from
> working. Under such circumstances, the
> claimant's subjective beliefs are not
> corroborated by the medical record.

The full commission, on October 3, 1996, found that "claimant's physical recovery does not appear to be contested. Her disability, if any, is the result of her ensuing psychological condition." Additionally, the commission reached the following conclusions:

4

[C]laimant's release to return to work, from a psychological standpoint, was conditional, the condition being that she enter into counseling or therapy sessions at the same time she return to work. There is no evidence that she was offered work by her preinjury employer in any capacity. This was the employer's burden, inasmuch as it was the moving party in this case.

Moreover, there is no evidence that the recommended psychological counseling was offered the claimant. She was questioned extensively on this point and repeatedly stated her understanding that Dr. Friedman's office would be in touch with her to schedule these sessions. The only evidence to the contrary is the letter from Ms. Kinder to Dr. Friedman, dated December 13, 1995, noting her understanding that the claimant would be responsible for scheduling the sessions. Although Dr. Friedman signed this letter indicating his agreement with Ms. Kinder's summation of her telephone conversation with him the same day, there apparently was no follow-up by either side in scheduling these appointments.

Upon this record, we find upon Review that the claimant has not recovered from a psychological standpoint sufficiently to return to her preinjury employment. Her release clearly was conditioned upon counseling, which was to commence at the same time she returned to work. The claimant has not refused the psychological counseling, but testified repeatedly that it was her understanding that she would be informed when appointments were made. Moreover, these appointments were to coincide with her return to employment, which was never offered. The employer, in summary, should have offered the claimant her preinjury job, notwithstanding her opinion that she was not able to perform it, and at the same time, offered the recommended psychological treatment. Having failed to do so, the employer has not established a basis upon which compensation may be suspended.

CONDITIONAL RETURN TO WORK

5

Employer argues that the commission erred in its decision that claimant's release to return to work was conditioned upon her receiving therapy.  This issue, whether claimant's return to work was conditional, is a question of fact.

It is well settled that findings of fact made by the commission are binding on appeal even if contrary evidence exists in the record.  Russell Loungewear v. Gray, 2 Va. App. 90, 341 S.E.2d 824 (1986); Rogers v. Williams, 196 Va. 39, 82 S.E.2d 601 (1954).  The commission's resolution of a conflict in medical evidence, including an internal conflict in an expert's opinion, is within the purview of the commission's fact finding authority and is binding on appeal if it is supported by credible medical evidence.  Chandler v. Schmidt Baking Co., Inc., 228 Va. 265, 321 S.E.2d 296 (1984); Sneed v. Morengo, Inc., 19 Va. App. 199, 450 S.E.2d 167 (1994).  In the instant case, there is no credible evidence to support the commission's finding that claimant's release to return to work was conditioned on her receipt of counseling.

Dr. Friedman specifically recommended that he "would . . . recommend a brief course of structured psychotherapy for approximately 4 to 6 sessions."  He made this recommendation "to help [claimant] develop appropriate coping skills to self-manage her chronic pain that would enable her to resume a more normal, less disabled, lifestyle including return to work."  (Emphasis added.)

6

Dr. Smoller's report, relied upon by the commission, contained treatment recommendations, which when read in their entirety, clearly state that claimant's return to work was unconditional: "I would recommend eight sessions [of counseling] with a return to work _during_ those eight sessions. . . . The patient has _no limitation_ of duties as _related to mental health_. She has _no disability_ . . . _related to her psychiatric status_. . . . [T]his patient may return to work _during_ the course of therapy." (Emphasis added.) Dr. Smoller used no language to indicate that claimant should or must receive therapy prior to returning to work. Rather, he further stated that, "[t]echnically, the patient may return to work _immediately_ from a psychiatric standpoint as she has no psychiatric disability." (Emphasis added.) Additionally, he clarified his recommendation for counseling: "[Claimant's] psychiatric status, however, _does impair her efficiency somewhat_ and thus it would be _helpful_ to have her in supportive therapy . . . while she returns to work." (Emphasis added.)

Lastly, Barbara J. Kinder, R.N., wrote a letter to Dr. Friedman to confirm his recommendation that claimant "could be released to work . . . immediately, with regard to her mental health status" and that "she schedule an appointment . . . to coincide with her first week of work . . . to work with her on her adjustment issues."

The foregoing evidence fails to support the commission's

7

finding that claimant's release to return to work was a conditional one.  Rather, the record reveals that it was recommended by both doctors that claimant, who had no mental or emotional work limitations, return to work.

Accordingly, the decision of the commission is reversed.

<u>Reversed.</u>