COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Bumgardner and Humphreys
Argued by teleconference


BETTY B. COAL COMPANY, INC. AND
 NATIONAL UNION FIRE INSURANCE
 COMPANY OF PITTSBURGH
                                        MEMORANDUM OPINION[*] BY
v.    Record No. 0614-01-3            JUDGE ROBERT J. HUMPHREYS
                                            NOVEMBER 13, 2001
JERRY RUSSELL DOTSON


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            S. Vernon Priddy III (Sands, Anderson,
            Marks & Miller, on brief), for appellants.

            D. Allison Mullins (Lee & Phipps, P.C., on
            brief), for appellee.


     Betty B. Coal Company, Inc. and its insurer, National Union

Fire Insurance Company of Pittsburgh ("employer"), appeal a

decision of the Workers' Compensation Commission denying their

application to terminate an ongoing award of temporary total

disability benefits to Jerry Russell Dotson.  For the reasons

that follow, we affirm the decision of the commission.

     Because this decision has no precedential value, we recite

only those facts pertinent to our holding.  Dotson, a scoop

operator for employer, was injured on September 17, 1998 when he

---

     [*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

slipped and fell while cleaning debris out of the bucket of the scoop he had been operating.

Following a medical examination performed by Dr. Kevin Blackwell, Dotson was diagnosed as suffering from a right elbow contusion, as well as right shoulder strain, and placed on restricted work status.

Dotson continued to experience shoulder pain and received treatment for this problem through November of 1998. At that time, Dr. Blackwell referred Dotson to Dr. John M. Chandler, an orthopedist.

On November 23, 1998, Dr. Chandler diagnosed Dotson with "cervical spondylosis, symptomatic with mild to moderate rotator cuff impingement, right worse than left." As to Dotson's shoulder injury, Dr. Chandler recommended, "[w]ith respect to the shoulder, [Dotson] simply needs to continue working on restricted duty."

Dotson saw Dr. Chandler once again on January 14, 1999. He advised Dotson to undergo EMGs and nerve conduction studies, and referred him to "Dr. McConnell," a spine surgeon. He further recommended that Dotson continue to perform only light duty work. On June 3, 1999, in response to a letter of inquiry from employer's counsel, Dr. Chandler wrote:

> Received your letter of June 1, 1999. I can
> say with certainty that Mr. Dotson would
> have needed to be on light duty from the
> period I saw him January 14, 1999 until a
> period that he could see Dr. McConnell.

-

That appointment was made January 25, 1999 I believe. Beyond that I cannot make any inferences as to whether or not his work status would have changed. It is not appropriate for me to review records and try to make that determination. . . .

Dotson returned to Dr. Blackwell for treatment on October 14, 1999. Dr. Blackwell indicated in his handwritten treatment notes that the visit was a "FU for Rt. Shoulder Strain." He noted "R. shoulder pain," but wrote "normal exam." Under the heading "Disposition," Dr. Blackwell indicated Dotson "[m]ay return to work without restrictions on 10/14/99." However, underneath this notation, Dr. Blackwell noted that an orthopedic referral was pending.

On December 10, 1999, Dr. Chandler examined Dotson once again, and noted:

My recommendation at this time would be to allow this man to rehabilitate his upper extremities. I do not think that the Cortisone injections in his shoulder are likely to relieve his pain except temporarily, and the risk of long term damage to the articular surface and otherwise normal shoulder is probably weighed against a more appropriate therapy which would be to place him in a therapy program. Certainly, we would be happy to review any records that needed to be reviewed, though from a pure orthopedic standpoint at this time, I believe that his persistent problems are probably related to his C6 radiculopathy and incomplete recovery of that. It is my opinion that a Cortisone injection would not appreciably improve his symptoms in the long term at this time.

-

Dotson filed his initial claim for temporary total disability benefits on December 11, 1998. Both Dotson and employer stipulated that his elbow and shoulder injuries were causally related to the accident. By opinion dated August 18, 1999, the deputy commissioner awarded Dotson temporary total disability benefits for his right elbow and shoulder beginning January 29, 1999 and continuing. Employer sought a review by the full commission. The full commission affirmed the deputy's decision on May 5, 2000. See Jerry Russell Dotson v. Betty B Coal Co., Inc., VWC File No. 193-33-27 (May 5, 2000).

During the pendency of the above proceedings, employer filed a separate application for hearing on December 1, 1999, requesting termination of Dotson's award of temporary total disability benefits. Specifically, employer alleged in its application that Dotson "was released to return to pre-injury work on October 14, 1999 per Dr. Blackwell's report dated October 14, 1999." Employer attached Dr. Blackwell's handwritten treatment notes from October 14, 1999 to its application for hearing.

The deputy commissioner decided the application on the record, finding that employer failed to raise the issue of whether any disability still remaining was unrelated to the compensable injury and that employer failed to establish that Dotson was capable of returning to his pre-injury work as there was no evidence that Dr. Chandler, Dotson's orthopedist, lifted

-

Dotson's work restrictions.  The full commission affirmed, with one dissent.  On appeal, employer relies on Dr. Blackwell's October 14, 1999 handwritten treatment notes in contending that the commission erred in finding it failed to establish that Dotson was released to return to pre-injury work.

> Guided by well established principles, we construe the evidence in the light most favorable to the party prevailing below, claimant in this instance.  "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the Commission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding."

Russell Stover Candies v. Alexander, 30 Va. App. 812, 825, 520 S.E.2d 404, 411 (1999) (quoting Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986)).

> Consequently, where the commission resolves [a] conflict in medical testimony, on appeal the medical issue will not be "settled by judicial fiat," and the commission's decision is binding so long as it is supported by credible evidence.  When, however, there is no conflict in the evidence or where there is no credible evidence to support the commission's factual findings, the question is the sufficiency of the evidence, which is a question of law.

Stancill v. Ford Motor Co., 15 Va. App. 54, 58, 421 S.E.2d 872, 874 (1992) (quoting Johnson v. Capitol Hotel, 189 Va. 585, 590, 54 S.E.2d 106, 109 (1949)).

Employer contends that here, the evidence is "undisputed." Thus, employer argues that the question is one of sufficiency of

-

the evidence, a question of law suitable for our review on appeal. We disagree.

First, employer misstates the standard of review. It is not a question of whether the evidence is "in dispute." Instead, the issue on review is whether there is a "conflict in the evidence" itself. See id. If no such conflict exists, the question becomes one of sufficiency, a question of law to be determined by this Court on appeal.

In the present case there is a distinct conflict between the medical opinion of Dr. Chandler, as opposed to that of Dr. Blackwell. Thus, the issue is a question of fact, not an issue of law. See Russell Stover Candies, 30 Va. App. at 826, 520 S.E.2d at 411 ("'[a] question raised by conflicting medical opinion is a question of fact'" (quoting Commonwealth v. Powell, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986))).

"It is firmly established that a finding by the [c]ommission as to questions of fact, if supported by credible evidence, is conclusive and binding upon us. Moreover, this rule also applies to facts found from conflicting expert opinions." Chandler v. Schmidt Baking Co., 228 Va. 265, 267-68, 321 S.E.2d 296, 297 (1984).

Here, the credible evidence demonstrated that Dr. Blackwell first placed Dotson on work restrictions on September 21, 1998. On November 23, 1998, Dr. Chandler agreed with the recommendation of restrictions to light duty. Although

-

Dr. Blackwell lifted the work restrictions he had placed on Dotson on October 14, 1999, the commission found it relevant that he noted in doing so that an orthopedic referral was still pending. On December 10, 1999, when Dotson saw Dr. Chandler, his orthopedist, Dr. Chandler advised him to continue physical therapy for his shoulder. Further, Dr. Chandler did not lift the work restrictions he had imposed during both the prior year and in early 1999. Thus, the commission resolved this conflict in the physicians' opinions in Dotson's favor, as it had the right to do.

Although employer correctly points out that in response to its inquiry, Dr. Chandler stated on June 3, 1999 that he could not assert an opinion at that time as to Dotson's ability to return to pre-injury work, employer neglects to recognize that Dr. Chandler made this statement in reference to its request that he make this determination based upon a mere review of Dotson's medical records. Dr. Chandler declined to opine as to Dotson's status based upon the records alone. However, when he physically examined and treated Dotson on December 10, 1999, he made no attempt to remove the restrictions he had imposed several months earlier. Thus, we find that the credible evidence supports the commission's finding of fact in this regard.

We do not address employer's argument, suggested in a footnote in its brief, that the commission erred in finding

-

employer had failed to properly raise the question of whether Dotson's continued inability to work related only to his neck injury.  Employer raised this argument only by stating that it reserved the right to assert the argument "should Dotson argue that the Full Commission also agreed with the deputy commissioner's" finding in this regard.  Dotson raised no such argument.  Therefore, we find that the issue is not properly before this Court for our consideration.

Accordingly, we affirm the decision of the commission.

<u>Affirmed</u>.